lp

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

ERIC O. HERNANDEZ, )
 )
       Petitioner, )
 )
v. ) Case No. 09-3160-JAR
 )
STATE OF KANSAS, )
et al., )
 )
       Respondents. )
_____ )

## **MEMORANDUM AND ORDER**

This matter is before the court on petitioner Eric Hernandez's Petition for Writ of Habeas Corpus (Doc. 1) filed pursuant to 28 U.S.C. § 2254. Mr. Hernandez seeks to challenge his state conviction in the District Court of Sedgwick County, Kansas, of one count of rape and two counts of criminal restraint. Petitioner raised three claims in his initial application. Upon screening, the Court found that ground one had not been exhausted and that ground two, also unexhausted, was a challenge to petitioner's 2005 contraband trafficking conviction, rather than the 2004 conviction he challenges here. Petitioner was given the option of having the entire "mixed" petition dismissed without prejudice or amending and proceeding only upon his exhausted claim. He chose the latter. Accordingly, the Court dismissed grounds one and two, without prejudice, and issued a show cause order to respondents upon a single claim only: that the trial court violated petitioner's rights under the Sixth and Fourteenth Amendments and abused its discretion by requiring that he wear a "stun belt" at trial. Respondents have filed an Answer and Return (Doc. 14) together with the pertinent state court records, and the time for petitioner to file his Traverse has expired.

The Court has thoroughly reviewed the Petition as amended, the Answer and Return, and the pertinent state court records together with the relevant legal authority. For the reasons

that follow, the Court determines that Mr. Hernandez has failed to demonstrate that the state court adjudication in his case was contrary to or an unreasonable application of clearly established Supreme Court precedent. Accordingly, the Petition is denied.

**I.      Background**

Mr. Hernandez was charged with criminal restraint and rape of the mother of his infant son as the result of events that occurred in June 2004. The facts describing his offense behavior were fully set forth in the opinion of the Kansas Court of Appeals ("KCA") on direct appeal.[1] They are not repeated here, as they are not relevant to a determination of petitioner's claim. The KCA also set forth the following facts that are relevant:

> On the day of trial, before Hernandez was brought to the courtroom, sheriff's deputies discovered he had a toothbrush which had been sharpened to a point. The toothbrush was concealed in the waistband of Hernandez' pants.[2] The trial court ordered Hernandez to wear a stun belt around the calf of his leg under his pants. The jury convicted Hernandez as charged. The court sentenced Hernandez to a presumptive sentence of 195 months' incarceration.[3]

The KCA described events that transpired immediately before trial by quoting the trial transcript:

> THE COURT: We're in continuing proceedings on the State of Kansas vs. Eric O. Hernandez, 2004 CR 1653. All persons necessary are present, including Mr. Hernandez. The jury is not present, and I'm wanting to put on the record the matter that occurred this morning. Before Mr. Hernandez was brought over to the courtroom this morning, the sheriff's deputy informed me that during the pat down search, they had found upon Mr. Hernandez a toothbrush which had been sharpened to a point which was obviously intended to be used as a weapon in some fashion. And that the toothbrush was hidden within his

---

[1] *See Kansas v. Hernandez*, 132 P.3d 501 (Kan.Ct.App. Apr. 21, 2006) (Table).

[2] Mr. Hernandez was subsequently convicted of trafficking contraband in a correctional institution as a result of this incident. *State v. Hernandez*, 152 P.3d 688, 2007 WL 656356 (Kan. Ct. App. March 2, 2007) (Table), *review denied* (Kan. Sept. 27, 2007).

[3] *Kansas v. Hernandez*, 132 P.3d at *2.

waistband of his pants. Or concealed in the waistband of his pants. Obviously has been taken from him, but in an overabundance of caution, not giving any reasons or reason for having concealed that weapon upon him and for safety of all persons in the courtroom, the deputies requested permission to place on Mr. Hernandez a shock collar.

I have authorized the placement of a shock collar on Mr. Hernandez. In my presence Mr. Hernandez was read the sheriff's department's policy concerning use of and effects of a shock collar. He was read that and the document was translated to him by his interpreter . . . . Mr. Hernandez acknowledged understanding of the function, the effect, the warning and circumstances under which the shock collar would be used against him, and again acknowledged understanding all of that.

Mr. Beall indicated to me . . . the desire to object to the placement of the shock collar, and certainly I am going to allow Mr. Beall the opportunity to make that objection.

Mr. Beall, if you would, please.

MR. BEALL: Thank you, Your Honor. We would object to the shock collar being placed on Mr. Hernandez. I do note that the shock collar is under his pants, but we still have concerns that a shock collar was placed on him. Basically with a shock collar on, it might restrict his movement if he were to testify, his ability to testify because he's got an added hindrance upon him, that shock collar.

THE COURT: I don't think the weight or impaired mobility of the shock collar or any impaired mobility caused by the shock collar would affect Mr. Hernandez's ability to testify, if he does choose to testify. Again, as stated, I don't know why Mr. Hernandez was going to bring, basically, a knife to the courtroom. But whatever motivation may have caused him to contemplate that, I'm sure the motivation still potentially remains within his mind, and, again, in an abundance of caution to prevent any outbreak or disturbance, or more importantly, injury to anybody in the courtroom, I think the shock collar is appropriate. As Mr. Beall has indicated, it is unobtrusive. It is not visible to anybody in the courtroom. It is covered by the pant leg of Mr. Hernandez. It is located on his calf; is that correct, Deputy?

THE DEPUTY: Yes, Sir.

THE COURT: It is located on his calf. The only time the

shock collar would ever be present would be if it was
implemented and basically used on Mr. Hernandez. And
if that's the case, Mr. Hernandez would have done
something to warrant that. So I don't see any prejudicial
effect whatsoever on the use of the shock collar under
these circumstances. I will note the objection; I will
overrule the objection.[4]

Petitioner was convicted by the jury and sentenced on December 16, 2004. In his direct appeal to the KCA, he claimed that the "trial court committed reversible (error) in requiring him to wear a leg stun belt during his trial." In support, he argued that "the trial court did not make an adequate inquiry into the need to use the stun belt, as outlined in *State v. Powell*, 274 Kan. 618, 620-23, 56 P.3d 189 (2002)." He alleged that "the trial court ordered the stun belt simply out of an 'abundance of caution' and the stun belt was not shown to be the least restrictive restraint possible."[5] He asserted that use of the stun belt "violated his Fifth and Fourteenth Amendment rights to due process and to a fair trial and also his Sixth Amendment right to confer with counsel and participate in his defense."[6]

In its unpublished opinion, the KCA thoroughly discussed the issue and held as follows:

> The Kansas Supreme Court examined the use of stun belts recently in *Powell*, 274 Kan. 618, 56 P.3d 189. Powell was convicted of capital murder. On the morning of trial and prior to empaneling the jury, the State, on behalf of the sheriff, requested that Powell be required to wear a stun belt. The sheriff gave testimony that this was a capital murder case, Powell was a prior offender, while incarcerated Powell made a homemade weapon and stabbed an inmate five times, on another occasion prison guards found a toothbrush sharpened to a point and hidden in Powell's shampoo bottle, Powell had been placed in segregation numerous times, and Powell was a threat to the safety of the public and to the court. The prosecutor informed the court that at a hearing on termination of Powell's parental rights involving several

---

[4]*Id.* at *2-*3 (quoting Trial Transcript [TT], Vol. I, 3-5.)

[5]*Id*. at *2-*3.

[6]*Id.* at *2.

4

of his children, Powell had to be removed from the courtroom for disruptive conduct. Powell opposed the stun belt by informing the court he had been in the courtroom several times without incident, and his counsel argued there were insufficient reasons to justify the request.

The trial court in *Powell* granted the request for a stun belt. The court stated that Powell had never given the particular court any reason to believe he would not act in a reasonable fashion, but held the sheriff provided adequate reason for using the stun belt for security measures. The trial court made portions of two documents part of the record, "authorization for use" of the electronic belt system and the "inmate notification." 274 Kan. at 621-22, 56 P.3d 189. The trial court found that the belt was not obvious unless someone brought special attention to it. The stun belt was not activated during trial and no attention was brought to it. Powell did not testify after a colloquy showing a free and voluntary decision.

Powell claimed a violation of his Sixth and Fourteenth Amendment rights and also that it was an abuse of discretion for the trial court to order him to wear the stun belt. The *Powell* court held that . . . there was a complete lack of prejudice, which would have negated Powell's constitutional claim . . . . The court also held it would not presume prejudice where none was shown and the record indicated to the contrary. 274 Kan. at 625-26, 56 P.3d 189.

The *Powell* court provided an in-depth examination of a trial court's discretion in ordering a stun belt. The court discussed the use of a leg brace/restraints in *State v. Davidson*, 264 Kan. 44, 954 P.2d 702 (1998), *State v. Ninci*, 262 Kan. 21, 936 P.2d 1364 (1997), and *State v. Williams*, 228 Kan. 723, 621 P.2d 423 (1980). The *Powell* court did not generally prohibit the use of stun belts: "We are not prepared to follow Indiana in a prospective ban on stun belts even though we could do so and still affirm Powell's conviction because of the complete lack of any prejudice that is shown by the record in his case." 274 Kan. at 633, 56 P.3d 189.

The trial court has discretion to impose restraints. It is appropriate for a court to impose some restraint upon a defendant as a result of an identifiable security risk. However, the court must authorize the least obtrusive or restrictive restraint that effectively will serve the specified security purpose. After discussing numerous federal cases on the issue of stun belts, the *Powell* court provided

the following prospective analysis:

> "Having so held, we now also repeat what we said in both *Ninci* and *Davidson*. It is the trial judge's responsibility to insure that a defendant receives a fair trial. The sheriff is in control of the defendant outside the courtroom, but, within the courtroom, the obligation of courtroom security becomes a matter of shared concern. While deference should be given to law enforcement officers with security obligations, the trial judge must retain complete control over the courtroom and exercise his or her discretion in finally determining if restraints are to be utilized. Prior conduct in court proceedings is an important factor to be considered. If authorized, the trial court must utilize the least obtrusive or restrictive restraint that will effectively serve the specified security purposes. . . .["]
>
> "Each case must turn on its individual facts. We hesitate to set forth any list of factors required to be considered. But, the background of the defendant; the nature of the charges; evidence of dangerous incidents; testimony about the restraints sought to be used; prior conduct of the defendant; the objection to use of the restraint and/or the election by the defendant whether to testify; the physical facts of the individuals and the courtroom; the presence or absence of victims, family, or spectators; and other factors that will vary from case to case must be considered by the trial court. Manifest necessity as used by the California court in the *Mar* case means that the need for the usage of restraints is clearly apparent. But, what that necessity is in the final analysis must be left to the sound discretion of trial judges who have direct contact with difficult situations and must have the necessary flexibility to insure that fair trials are held consistent with safety to all concerned." 274 Kan. at 636-37, 56 P.3d 189.

As was the case in *Powell*, based on the record before us, the trial court's imposition of a stun belt on Hernandez's

leg was not an abuse of discretion for several reasons. First and foremost, we will give deference to the trial court in taking adequate measures to address immediate and definable threats to the security and safety of the courtroom. An inmate who is nearly successful in bringing a weapon into the courtroom, and fails to provide any excuse for possessing the weapon, presents a sufficient security risk. Second, the stun device was concealed under his pant leg and the device was never activated. Third, there is no indication that the jury was aware of its existence or that it had any effect on the decision in this case. Last, there was no showing of any prejudice to Hernandez whatsoever. He elected not to testify and there was not a showing the presence of the stun belt had any influence in this decision. Hernandez has failed to demonstrate any "chilling" of his constitutional rights to confer with counsel or to testify on his own behalf.[7]

The Kansas Supreme Court denied review on September 19, 2006.[8]

## II. Standard

Because Mr. Hernandez is proceeding pro se, the Court must construe his filings liberally.[9] The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") govern this court's review of petitioner's claim. Recently, the Tenth Circuit explained the AEDPA standard where, as here, the state court resolved the petitioner's claim on the merits.[10] In *Hooks v. Workman*,[11] the Circuit stated that the court may not grant habeas relief on any such claim unless the state court decision

> was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

---

[7]*Id.* at *3-*5.

[8]In April, 2007, Hernandez filed a pro se K.S.A. § 60-1507 motion in which he raised several distinct issues. The motion was denied, and its denial was affirmed on appeal to the KCA. *See Hernandez v. State*, 203 P.3d 88 (Kan. Ct. App. Mar. 13, 2009).

[9]*See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *Van Deelen v. Johnson*, 497 F.3d 1151, 1153 n.1 (10th Cir. 2007).

[10]*See Hooks v. Workman*, 606 F.3d 715 (10th Cir. 2010).

[11]*Id.*

7

Under the "contrary to" clause, we grant relief only if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, relief is provided only if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Gipson v. Jordan*, 376 F.3d 1193, 1196 (10th Cir. 2004) (quotations, alterations, and footnote omitted). . . .

Th[e] question is not wh[at] the trial judge should have [done.] It is not even whether it was an abuse of discretion for her to have done so-the applicable standard on direct review. . . . We have explained that "an unreasonable application of federal law is different from an incorrect application of federal law." Indeed, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Rather, that application must be "objectively unreasonable." This distinction creates "a substantially higher threshold" for obtaining relief than de novo review. AEDPA thus imposes a "highly deferential standard for evaluating state-court rulings," and "demands that state-court decisions be given the benefit of the doubt."

*Renico v. Lett*, --- U.S. ----, 130 S.Ct. 1855, 1862, 176 L.Ed.2d 678 (2010)(citations omitted).

It is important to note, however, that "[t]his standard does not require . . . abject deference, but nonetheless prohibits us from substituting our own judgment for that of the state court." (Citation omitted). As the Supreme Court has made clear,

> Even in the context of federal habeas, deference does not imply abandonment or abdication of judicial review. Deference does not by definition preclude relief. A federal court can disagree with a state court's . . . determination and, when guided by AEDPA, conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence.

8

> *Miller-El v. Cockrell*, 537 U.S. 322, 340, 123 S.Ct. 1029,
> 154 L.Ed.2d 931 (2003); *see also Miller-El v. Dretke*, 545
> U.S. 231, 240, 125 S.Ct. 2317, 162 L.Ed.2d 196 (2005)
> (holding the AEDPA "standard is demanding but not
> insatiable").[12]

"In ascertaining whether the law is clearly established," the court "review(s) Supreme Court holdings extant when the state court conviction became final."[13] "[O]nly the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254."[14]

Because the record establishes that petitioner's claim is without merit, he is not entitled to an evidentiary hearing.[15]

### III. Analysis

The Kansas courts' determination of petitioner's claim was not contrary to clearly established Supreme Court law. Mr. Hernandez was tried, convicted and sentenced in 2004. In 2005, the U.S. Supreme Court issued its opinion in *Deck v. Missouri*,[16] which addressed "whether shackling a convicted offender during the penalty phase of a capital trial violates the Federal Constitution."[17] The Court held in *Deck* "that the Constitution forbids the use of visible shackles[18] during the penalty phase, as it forbids their use during the guilt phase, *unless* that use

---

[12]*Id.* at 720-21.

[13]*Fairchild v. Workman*, 579 F.3d 1134, 1139 (10th Cir. 2009) (citing *House v. Hatch*, 527 F.3d 1010, 1015 (10th Cir. 2008), *cert. denied*, 129 S.Ct. 1345, 173 L.Ed.2d 613 (Feb. 23, 2009) (quoting *Willliams v. Taylor*, 529 U.S. 362, 380 (2000) (review under AEDPA looks to law that was clearly established at the time the petitioner's state court conviction became final)); *Libberton v. Ryan*, 583 F.3d 1147, 1161 (9th Cir. 2009) (same).

[14]*House*, 527 F.3d at 1019 (citing *Maynard v. Boone*, 468 F.3d 665, 671 (10th Cir. 2006), *cert. denied*, 549 U.S. 1285 (2007)).

[15]*Schriro v. Landrigan*, 550 U.S. 465, 474 (2007); *Anderson v. Attorney Gen. of Kan.*, 425 F.3d 853, 858 (10th Cir. 2005) (holding an evidentiary hearing is not appropriate where petitioner's "allegations, if true and not contravened by the existing factual record, would entitle him to habeas relief.").

[16]544 U.S. 622 (2005).

[17]*Id.* at 624.

[18]The Sixth Circuit observed that *Deck,* and the bulk of federal cases discussing the use of physical restraints during trial and sentencing, involved traditional methods of securing the accused, such as handcuffs and shackles. *United States v. Miller*, 531 F.3d 340, 344-45 (6th Cir. 2008) (citing *Deck*, 544 U.S. at 629), *cert. denied*, 129 S.Ct. 307 (2008). They nevertheless concluded that the "same fundamental issues are implicated in the decision of the district court" to restrain a defendant through the use of a stun belt, and held

9

is justified by an essential state interest-such as the interest in courtroom security-specific to the defendant on trial."[19] They observed that "[c]ourts and commentators share close to a consensus that, during the guilt phase of a trial, a criminal defendant has a right to remain free of physical restraints that are visible to the jury; that the right has a constitutional dimension; but that the right may be overcome in a particular instance by essential state interests such as physical security, escape prevention, or courtroom decorum."[20] The *Deck* opinion, because it was issued prior to the final determination of petitioner's direct criminal appeal, is "clearly established Federal law as determined by the Supreme Court" in this case. In any event, with respect to the guilt phase the Court in *Deck* indicated that the same Federal law had been long established.

In *Deck*, the Supreme Court listed three underlying "fundamental legal principles": (1) the criminal process presumes the defendant is innocent until proven guilty; (2) "the Constitution guarantees a right to counsel and the use of physical restraints diminishes that right" in that they can interfere with the accused's ability to communicate with his lawyer as well as to participate in his own defense as by "freely choosing to take the stand"; and (3) "judges must seek to maintain a dignified judicial process including respectful treatment of defendants."[21] They reasoned that "[t]he routine use of shackles in the presence of juries would undermine these symbolic yet concrete objectives."[22] On the other hand, they also expressly recognized "the need to restrain dangerous defendants to prevent courtroom attacks, or the need to give trial courts latitude in making individualized security determinations," and stated that they were "mindful of the tragedy that can result if judges are not able to protect themselves and their

---

that "a decision to use a stun belt must be subjected to at least the same close judicial scrutiny required for the imposition of other physical restraints." *Id.* (quoting *Gonzalez v. Pliler*, 341 F.3d 897, 901 (9th Cir. 2003)).

[19]*Deck*, 544 U.S. at 624 (quotations omitted and emphasis in original) (citing *Holbrook v. Flynn*, 475 U.S. 560, 568-69 (1986); *see also Illinois v. Allen*, 397 U.S. 337, 343-44 (1970)).

[20]*Id*. at 628 (citations omitted).

[21]*See Lakin v. Stine*, 431 F.3d 959, 962 n. 1 (6th Cir. 2005) (citing *Deck*, 544 U.S. at 631)), *cert. denied*, 547 U.S. 1118 (2006).

[22]*Deck,* 544 U.S. at 631.

courtrooms." They held that, "given their prejudicial effect, due process does not permit the use of visible restraints if the trial court has not taken account of the circumstances of the particular case."[23] The Court thus concluded:

> [W]e must conclude that courts cannot routinely place defendants in shackles or other physical restraints visible to the jury during the penalty phase of a capital proceeding. The constitutional requirement, however, is not absolute. It permits a judge, in the exercise of his or her discretion, to take account of special circumstances, including security concerns, that may call for shackling. In so doing, it accommodates the important need to protect the courtroom and its occupants. But any such determination must be case specific; that is to say, it should reflect particular concerns, say, special security needs or escape risks, related to the defendant on trial.[24]

The Kansas trial court in petitioner's case acted without the benefit of *Deck*. The Kansas appellate courts did not specifically cite or set forth the standards found in *Deck*. Nevertheless, the KCA's thorough legal analysis based upon *Powell*, was fully in accord with the reasoning, conclusions and holding in *Deck*. The KCA need not be aware of or cite to Supreme Court opinions so long as neither the reasoning nor the result of the state court's decisions contradicts them.[25] The KCA in petitioner's case clearly applied a standard substantially similar to that in *Deck*.

The Court additionally finds that the decision of the Kansas courts in petitioner's case was not "based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."[26] The KCA found that there was no indication that the jury was aware of the stun belt on petitioner's calf; the trial judge did not abuse his discretion as

---

[23]*Id.* at 632.

[24]*Id.* at 633.

[25]*Mitchell v. Esparza*, 540 U.S. 12, 16 (2003); *Patton v. Mullin*, 425 F.3d 788, 795 (10th Cir. 2005) (holding even though a state court decision cites no federal law, it is accorded AEDPA deference if the state court rejected the claim under a standard either identical to or more favorable to the applicant than the federal standard), *cert. denied*, 547 U.S. 1166 (2006).

[26]28 U.S.C. § 2254(d)(2).

11

the defendant presented a sufficient, identifiable security risk; and there was no showing of any prejudice to defendant. The first finding is fully supported by the state court record. Petitioner does not even allege and there is no evidence in the record that any juror was ever aware that he was wearing a concealed stun belt. It follows that prejudice is not presumed.[27]

The second finding, that the trial judge acted within his discretion, is also supported by the record, which clearly shows that the judge rationally saw the matter as one implicating courtroom security and conducted a pretrial hearing. Petitioner's objections were heard outside the presence of the jury and formal findings were made. The record also reflects that the trial judge made a "case specific" determination regarding security concerns related to petitioner and his trial. The judge referred to the risk of petitioner having a makeshift knife in the courtroom and his undisclosed and unabated motivation for wanting to bring a weapon into the courtroom. It is not seriously disputed that petitioner's acts prior to trial were reasonably regarded as a threat to courtroom security. The trial court thus "engaged in the type of particularized inquiry that *Deck* requires," and this was not a case of shackling ordered "without adequate justification."[28]

The KCA's finding that Mr. Hernandez could not meet his burden of showing prejudice is also fully supported by the record.[29] The judge allowed a stun belt around petitioner's calf that the jury could not see unless it had to be activated.[30] It follows that relief which *Deck* provides, that "the defendant need not demonstrate actual prejudice to make out a

---

[27]*United States v. McKissick*, 204 F.3d 1282, 1299 (10th Cir. 2000) (noting that the court does not presume prejudice where there is no evidence in the record that any member of the jury noticed the stun belt).

[28]*Deck*, 544 U.S. at 635; *Williams v. Norris*, 612 F.3d 941, 958-59 (8th Cir. 2010), *cert. denied*, 131 S.Ct. 1677 (2011).

[29]*See Yates v. United States*, 362 F.2d 578, 579 (10th Cir. 1966) (denying relief where restraint placed upon defendant was reasonable and there was no evidence that any juror had in fact observed him under restraint, there was no prejudice).

[30]The Seventh Circuit has "described the use of a stun belt as a 'method[ ] of restraint that minimize[s] the risk of prejudice' because it is hidden beneath a defendant's clothing." *Stevens v. McBride*, 489 F.3d 883, 899 (7th Cir. 2007) (quoting *United States v. Brooks*, 125 F.3d 484, 502 (7th Cir. 1997)), *cert. denied*, 553 U.S. 1034 (2007).

due process violation," is not applicable to this case.[31] Petitioner has not demonstrated any actual harm or prejudice that resulted from the use of the stun belt. He alleges no facts suggesting that the stun belt made it difficult for him to communicate with his attorney during trial. He does not allege that he was unable to speak or write down any information he wished to convey to counsel during trial or to follow the proceedings due to the stun belt. He makes no argument that the stun belt caused him pain or impaired his mental faculties. Mr. Hernandez was questioned on the record about the voluntariness of his decision not to testify and gave no indication that, but for the restraint, he would have taken the witness stand.[32] There is simply nothing to suggest that the shackling in this case had any prejudicial impact at trial or contributed in any way to the verdict.[33] Under 28 U.S.C. § 2254(e)(1), a state court's factual findings carry a presumption of correctness that may be overcome only when a petitioner presents clear and convincing evidence to the contrary. Petitioner provides no evidence to overturn the trial court's factual findings that the extra security was warranted and that the stun belt on his ankle was never visible to the jury.

Before the KCA, petitioner argued that the stun belt was not shown to be the least restrictive restraint possible. However, in *Deck*, the Supreme Court did not impose a "least restrictive alternative" requirement on trial courts. In short, it is plain that the state court adjudication in this case did not violate the rules set forth in *Deck*. The state court's determination in this case likewise does not contradict established Supreme Court precedent because the facts in this case are materially distinguishable from those in *Deck*, where the defendant shackled at trial with visible restraints including leg irons, handcuffs and belly chain.[34]

---

[31] *Id.*

[32] TT Vol. II, 3-4.

[33] *See Deck*, 544 U.S. at 635 (citing *Chapman v. California*, 386 U.S. 18, 24 (1967)).

[34] *See id.*; *Williams*, 529 U.S. at 405-06 (holding state court decision is contrary to clearly established federal law if it confronts a set of facts materially indistinguishable from a Supreme Court decision and nevertheless arrives at a different result); *Norris*, 612 F.3d at 958-59.

Hernandez has not identified any other Supreme Court precedent expressly extending the general prohibition on restraining a criminal defendant with visible shackles during a jury trial to the factual situation presented here, where the shackles were not visible and the defendant was discovered to have a concealed weapon. As a result, this Court cannot find that the KCA's adjudication of this claim was contrary to, or an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States. For this reason alone, habeas relief must be denied.[35]

Finally, the Court stresses that trial errors, even "non-structural" constitutional errors, are subject to harmless error analysis on review.[36] In *Deck*, the Supreme Court confirmed that harmless error analysis applies to the use of physical restraints on a criminal defendant at trial.[37] Even with a "juror's brief view of a defendant in shackles," such "an incident must result in prejudice to violate due process, and the burden is on the defendant to show such prejudice."[38] As previously discussed, Hernandez has alleged no facts whatsoever indicating that he was actually prejudiced by use of the stun belt. It follows that the trial court's error, if any, was harmless.

For the foregoing reasons, the Court concludes that petitioner is not entitled to relief under § 2254.

**IT IS THEREFORE ORDERED BY THE COURT** that petitioner's application for habeas corpus relief filed pursuant to 28 U.S.C. § 2254 (Doc. 1) is DENIED.

**IT IS SO ORDERED.**

Dated: June 7, 2011

                     S/ Julie A. Robinson

---

[35] *See House*, 527 F.3d at 1017 ("[T]he threshold determination that there is no clearly established federal law is analytically dispositive in the § 2254(d)(1) analysis.").

[36] *See Neder v. United States*, 527 U.S. 1, 7-8 (1999); *Arizona v. Fulminante*, 499 U.S. 279, 306-09 (1991).

[37] *Deck*, 544 U.S. at 635.

[38] *United States v. Jones*, 468 F.3d 704, 709 (10th Cir. 2006).

JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE